Rockingham
No. 91-583

ALAN GOULD

v.

GEORGE BROX, INC. & a.

April 16, 1993

*Frank V. Hekimian*, of Salem, by brief and orally, for the plaintiff.

*Bouchard & Mallory, P.A.*, of Manchester (*Christine Friedman* on the defendants' joint brief and orally for all defendants), for defendant George Brox, Inc.

*The Law Office of Rodney L. Stark, P.A.*, of Manchester (*Michael D. Hatem* on the defendants' joint brief), for defendant Richard Lavertu.

*Ouellette, Hallisey, Dibble and Tanguay*, of Dover (*William L. Tanguay* on the defendants' joint brief), for defendant Steven Dionne.

BATCHELDER, J. The plaintiff, Alan Gould, appeals the Superior Court's (*Mohl*, J.) grant of the defendants' motions for summary

judgment. He argues that the court erred in ruling that the "fireman's rule" barred the plaintiff's actions against all defendants and in denying his motion to amend. Because we hold that not all defendants are excluded from liability under the fireman's rule, we affirm in part, reverse in part, and remand.

On March 27, 1986, the plaintiff was working under the control of George Brox, Inc. (Brox) directing traffic at a highway construction site in the Town of Salem (the town). The plaintiff's job was to coordinate the movement of highway traffic and construction vehicles at the job site on Route 28. His normal and usual employment was that of a police sergeant for the town.

On the day in question, the plaintiff was working a special or private detail. His compensation was an hourly rate paid by Brox to the town and, in turn, paid by the town to him. While the plaintiff was so engaged, one of the defendants, Steven Dionne, operated a dump truck in the area in such a manner that its raised truck body or bed, so-called, pulled a telephone wire from its connection on a nearby utility pole.

In response to the fallen wire, the plaintiff told the Brox foreman that he would clear the area of traffic and proceeded to direct automobiles over the wire. The plaintiff signalled a second defendant, Richard Lavertu, to stop his automobile before crossing the downed wire, a section of which had been raised approximately a foot and a half above the ground by construction personnel working for Brox, the third defendant. Lavertu failed to stop and ran into a section of the raised wire, causing it to strike the plaintiff in the legs, knocking him to the ground, and causing the elbow injury for which recovery was sought.

After entry of the actions against the three defendants, each filed a motion for summary judgment, claiming insulation from liability because of the "fireman's rule," which precludes a firefighter, or a police officer, from recovering in tort for injuries caused by negligent conduct that creates the very occasion for the officer's engagement. In response to the defendants' fireman's rule defense, the plaintiff moved to amend his pleadings to include a claim based upon willful, wanton, and/or reckless acts of the defendants, as well as a claim of the defendants' intervening positive acts of negligence. The trial court granted the motions for summary judgment and denied the motion to amend. The plaintiff's motions for reconsideration were denied, and this appeal followed.

■■ In determining whether the motions for summary judgment were providently granted, we consider the affidavits and any

other evidence, as well as all inferences properly drawn from them, in the light most favorable to the plaintiff. *Gamble v. University of New Hampshire*, 136 N.H. 9, 16, 610 A.2d 357, 362 (1992). If there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the trial court must grant summary judgment. RSA 491:8-a, III (1983).

The plaintiff first argues that the fireman's rule does not apply to him because he was not working as a police officer at taxpayer expense at the time of the accident. In his pleadings against defendants Brox and Lavertu, however, the plaintiff alleges that at the time of the accident, he was "directing traffic as a uniformed member of the Salem Police Department," an allegation which, on a motion for summary judgment, the trial court was entitled to take as true. *See* SUPER. CT. R. 133. Further, the plaintiff's deposition revealed that these outside duty assignments were made by the police department's scheduling officer, retirement contributions were deducted from his salary, and the officer was considered to be on duty to respond to emergencies during the outside duty assignment. In addition, at oral argument the plaintiff represented that the salary for these outside duty assignments was negotiated in the police department collective bargaining agreement and acknowledged that he had received workers' compensation benefits for his injury from the town. Moreover, the trial court, in applying the fireman's rule to support its grant of summary judgment, found that the plaintiff was working as a police officer at the time of the accident.

Our only inquiry is whether the plaintiff is precluded from maintaining suit against the defendants because of the fireman's rule. The application of the fireman's rule in this case causes us to consider the situation that was anticipated in *England v. Tasker*, 129 N.H. 467, 529 A.2d 938 (1987). The relevant *Tasker* language limits the application of the fireman's rule:

> "In the case at bar, there is no question that the plaintiff was injured while responding in his professional capacity to the very type of situation for which he was paid and trained to cope. His complaint is 'based on the same conduct that initially created the need for [his] presence in his official capacity,' *Pottebaum v. Hinds*, 347 N.W.2d [642, 645 (Iowa 1984)], and thus is barred. We note that this is not a case involving a subsequent independent act of negligence directed toward the police officer, and thus we need not consider the extent to which the rule might apply in such cases."

*Tasker*, 129 N.H. at 472, 529 A.2d at 941.

In recognizing the fireman's rule in *Tasker*, we cautiously rested it upon considerations of public policy, distancing it from its earlier sources of vitality, such as the assumption of the risk doctrine, and the trespasser, licensee, or invitee status of occupiers of land. The policy argument, simply stated, derives from the view that "fundamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement." *Berko v. Freda*, 93 N.J. 81, 87, 459 A.2d 663, 666 (1983). It does not follow that because a person is employed in police, firefighter, or related work that such person is automatically, by virtue of the employment, without recourse against tortfeasors generally. Society expects its police, firefighters and related employees to respond to those situations which threaten life, safety, and property. In the ordinary course, such instances involve accidents, not the least of which involve automobiles. Many of these can be traced to either a lack of due care on someone's part or conduct by the segment of the citizenry who violate the provisions of the criminal law or other of society's rules.

■ Common sense tells us that it is the person whose conduct triggers the response who is immune from liability under a narrow but enlightened application of the fireman's rule. This observation is borne out by cases from other jurisdictions:

> "This doctrine speaks only to the negligence that started the fire. Case law draws a distinction between injuries stemming from the negligence that brought the firefighters or police to the scene in the first place and injuries suffered from independent causes that may follow. *Krueger v. City of Anaheim*, 130 Cal. App. 3d 166, 170, 181 Cal. Rptr. 631, 633 (1982). '[T]hus, a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain action against the speeder but the rule bars recovery against the owner of the parked car for negligently parking.' *Walters v. Sloan*, 20 Cal. 3d 199, 202 n.2, 571 P.2d 609, 611 n.2, 142 Cal. Rptr. 152, 154 n.2 (1977)."

*Berko v. Freda*, 93 N.J. at 85, 459 A.2d at 665. Similar views are expressed in *Pottebaum v. Hinds*, 347 N.W.2d 642, 646 (Iowa 1984):

> "The relevant inquiry is whether the negligently created risk which resulted in the fireman's or policeman's injury was the very reason for his presence on the scene in his professional capacity. If the answer is yes, then recovery is barred; if no, recovery may be had. . . . [A]lthough policemen

are barred from recovery against the person whose negli- gence created the need for their presence, they are not barred from recovery for negligent or intentional acts of misconduct by a third party. Nor would they be barred from recovery if the individual responsible for their presence engaged in subsequent acts of negligence or misconduct once the officer was on the scene."

As an aside, it is worth noting that it would be odd indeed to apply the rule in such a wooden manner as to preclude the governmental unit employing the injured officer or firefighter from subrogation rights against third party tortfeasors, thereby requiring society to become the insurer of the tortfeasor, who by the legerdemain of the rule is immunized from liability.

■ The negligence that engaged the plaintiff at the time and place in the case at hand was the negligence of defendant Dionne in causing the telephone wire to become disengaged from the utility pole, thus creating the hazard that required the plaintiff's presence. The plaintiff responded to the scene to control traffic and was not injured "while responding in his professional capacity to the very type of situation for which he was paid and trained to cope," *Tasker*, 129 N.H. at 472, 529 A.2d at 941, but rather by the subsequent and independent negligence of Lavertu and/or Brox employees.

■■ The plaintiff argues that the trial court erred in denying his motion to amend the pleadings to add conclusory allegations of "willful, wanton or reckless conduct" or "positive wrongful acts," *Migdal v. Stamp*, 132 N.H. 171, 175, 564 A.2d 826, 828 (1989), the two recognized exceptions to the fireman's rule. The denial of an amendment to the pleadings is within the sound discretion of the trial court. *Real Estate Planners v. Town of Newmarket*, 134 N.H. 696, 699, 597 A.2d 78, 80 (1991). Because the plaintiff's amendment incorporates the facts of the initial complaint and alleges only conclusions of law, *see Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 45, 534 A.2d 706, 708 (1987), and because the proposed amendment would not cure the defect in the writ, *see LaRoche, Adm'r v. Doe*, 134 N.H. 562, 568, 594 A.2d 1297, 1302 (1991), we find no abuse of discretion in the trial court's denial of the plaintiff's motion to amend. Accordingly, the trial court did not err in granting summary judgment in the case against defendant Dionne.

■ The suit against the other two defendants is of a different nature. In that action the plaintiff seeks recovery from the subse-

quent and independent acts of the Brox employees in manipulating the downed wire in a negligent manner and the act of Lavertu in running into the partially raised wire with his vehicle. As explained above, such conduct is excluded from immunity under the fireman's rule. *See Tasker*, 129 N.H. at 472, 529 A.2d at 941. Questions are therefore presented to the trial court on issues of liability and damages against these two defendants. Accordingly, the grant of summary judgment to defendants Brox and Lavertu is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Because we determine that the conduct of the two remaining defendants is excluded from the fireman's rule, we need not reach the plaintiff's alternative argument that the trial court erred in denying his motion to amend the pleadings to add allegations that the conduct of those two defendants fell within one of the exceptions to the fireman's rule.

*Affirmed in part; reversed in part; remanded.*

All concurred.